**VERIZON NORTHWEST INC,**
**Plaintiff—Appellant,**

v.

**WORLDCOM, INC; The Washington Utilities and Transportation Commission (WUTC); Marilyn Showalter, in her official capacity as Chairwoman of the Washington Utilities and Transportation Commission; Richard Hemstad, in his official capacity as Commissioner of the Washington Utilities and Transportation Commission; William R. Gillis, in his official capacity as Commissioner of the Washington Utilities and Transportation Commission, Defendants—Appellees.**

No. 01–35332.
D.C. No. CV–99–00912–JCC.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 11, 2002.

Decided April 7, 2003.

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Before SCHROEDER, Chief Judge, FISHER and PAEZ, Circuit Judges.

## MEMORANDUM *

Plaintiff Verizon Northwest, Inc. ("Verizon"), an incumbent local exchange carrier ("ILEC"), appeals from the district court's summary judgment upholding a decision by the Washington Utilities and Transportation Commission ("WUTC"). The WUTC interpreted and approved Verizon's interconnection agreement ("the Agreement") with its competitor WorldCom, Inc. ("WorldCom"), a competitive local exchange carrier ("CLEC"). The parties negotiated the Agreement pursuant to the Telecommunications Act of 1996 ("The Act"), Pub.L. 104–104, 110 Stat. 56 (codified in part at 47 U.S.C. §§ 251–261). The WUTC also assessed $66,000 in penalties against Verizon because it found that Verizon violated state law by withholding payment under the Agreement. WorldCom and the WUTC ("Appellees") challenge our jurisdiction over the appeal.[1]

We affirm the district court's summary judgment ruling upholding the WUTC's

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. We review *de novo* the district court's grant of summary judgment, *see US W. Communications v. MFS Intelenet, Inc.,* 193 F.3d 1112, 1117 (9th Cir.1999); we also review *de novo* whether the WUTC's rulings were consistent with the Act and its implementing regulations. *Id.* We review any state law questions raised by the WUTC's interpretation of the Agreement under an arbitrary and capricious standard. *US W. Communications, Inc. v. Wash. Utils. & Transp. Comm'n,* 255 F.3d 990, 994 (9th Cir.2001).

interpretation of the Agreement requiring reciprocal compensation for ISP-bound traffic and requiring Verizon to continue paying reciprocal compensation for local calls beyond the two year expiration date. However, we conclude that the WUTC's decision to impose penalties against Verizon was arbitrary and capricious and therefore reverse this part of the district court's judgment affirming the WUTC's assessment of $66,000 in penalties against Verizon.

## I.

■ First, we reject Appellees' challenge to our jurisdiction over Verizon's appeal. After the Supreme Court's recent decision in *Verizon Maryland, Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002), Appellees' jurisdictional arguments must fail. As we explained in *Pacific Bell v. Pac–West Telecomm, Inc.*, 325 F.3d 1114, and 01–17161 (*"Pacific Bell"*), a decision that we filed today, the Supreme Court in *Verizon Maryland* held that 28 U.S.C. § 1331 provides a basis for jurisdiction over an ILEC's claim that a state regulatory commission's order requiring reciprocal compensation for ISP-bound calls is pre-empted by federal law. *Verizon Md.*, 122 S.Ct. at 1758.

■ We also reject the two jurisdictional arguments that Appellees claim remain after *Verizon Maryland. Verizon Maryland* leaves little room to argue that § 252(e)(6) in any way limits federal court jurisdiction. Although the Court did not directly address the review of state law questions, *Verizon Maryland* explicitly states that "nothing in the Act displays any intent to withdraw federal jurisdiction under § 1331," and that § 252 "does not distinctively limit the substantive relief available," *id* at 1759. In light of the Court's interpretation of § 252, we conclude that our review of state law issues under § 1331 is not precluded.

■ We also reject Appellee's arguments that the Hobbs Act, 28 U.S.C. § 2343, precludes our review. Here, as in *Pacific Bell*, neither side seeks to re-adjudicate issues that already have been conclusively determined by the FCC. At most, they merely ask the court to interpret the FCC's rulings, to the extent that they are final and binding, and to determine whether the WUTC's actions here were consistent with federal law.

## II.

■ The WUTC's construction of the Agreement to require reciprocal compensation for ISP-bound traffic is also controlled by our analysis and decision in *Pacific Bell* where we held that ISP-bound traffic is not exempt from the negotiated reciprocal compensation provisions of interconnection agreements. In *Pacific Bell*, as here, the appellant ILECs (Pacific Bell and Verizon California) argued that the state regulatory commission's interpretation of the reciprocal compensation provisions of their interconnection agreements with CLECs was contrary to federal law. Specifically, the ILECS argued that a state regulatory commission's inclusion of ISP-bound traffic in a reciprocal compensation provision was contrary to the FCC's *Remand Order*, which exempted ISP-bound traffic from reciprocal compensation provisions. *See In the Mater of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, Inter–Carrier Compensation for ISP–Bound Traffic ("Remand Order")*, 16 F.C.C.R. 9151, 9152–53 (2001). Because the D.C. Circuit explicitly rejected the FCC's attempt to exclude ISP-bound traffic from reciprocal compensation, we concluded that federal law did not preclude the inclusion of ISP-bound traffic in the

reciprocal compensation provisions of interconnection agreements. *Pacific Bell; see also WorldCom, Inc. v. FCC*, 288 F.3d 429, 430 (D.C.Cir.2002).

Although Verizon acknowledges that the D.C. Circuit rejected the FCC's attempt to exclude ISP-bound traffic by calling it an "exception" under § 251(g) to the Act's reciprocal compensation requirements, it argues that because the D.C. Circuit did not vacate the portions of the *Remand Order* establishing a cost-recovery mechanism for ISP-bound calls, the FCC's conclusion that ISP-bound traffic is not subject to reciprocal compensation requirements still stands. Because the D.C. Circuit explicitly rejected the FCC's analysis exempting ISP-bound calls from reciprocal compensation provisions[2] and preserved only the prospective application of the interim alternative payment scheme for ISP-bound traffic as established in the *Remand Order*,[3] we reject Verizon's argument that the WUTC's decision to include ISP-bound calls in the compensation agreement was contrary to federal law. *Remand Order*, 16 F.C.C.R. at 9189.

We also reject Verizon's argument that the WUTC's interpretation of "Local Exchange Traffic" to include ISP-bound traffic is contrary to federal law because longstanding FCC precedent establishes that ISP-bound traffic is not local. As we explained in *Pacific Bell*, the FCC has yet to resolve whether ISP-bound traffic is "local" within the scope of § 251. It was therefore not inconsistent with this provision and well within the WUTC's authority for it to subject ISP bound traffic to reciprocal compensation.

### III.

■ Verizon argues that the WUTC erred by interpreting the Agreement to require Verizon to continue paying reciprocal compensation for local calls beyond the two year expiration date. As a matter of contract interpretation, this issue is controlled by the terms of the Agreement and state contract law. We agree with the district court that the WUTC's resolution of this issue was not arbitrary and capricious. *See US W. Communications v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1117 (9th Cir.1999).

Under Washington law, contract interpretation is governed by the "context rule" of the Restatement (Second) of Contracts §§ 212, 214(c) (1981). *Berg v. Hudesman*, 115 Wash.2d 657, 801 P.2d 222, 229–230 (1999). In contrast to the "plain meaning" rule, the "context rule" permits a court to look to extrinsic evidence to discern the meaning or intent of words or terms used by contracting parties, even when the parties' words appear to the court to be clear and unambiguous. *Id.* at 222. However, extrinsic evidence is not admissible for the purpose of adding to, modifying, or contradicting the terms of a written contract, in the absence of fraud, accident, or mistake. *Id.*

Section VIII of the Agreement, titled "TERM," laid out the terms of expiration as well as the terms under which the Agreement could be extended:

> Notwithstanding the foregoing, this Agreement shall, if not superseded by an interconnection agreement, expire two years after the effective date of the Agreement. In the event that the Agreement expires after two years, the interconnection arrangements in this Agreement shall remain in place until the Parties are able to negotiate and implement a new interconnection agree-

---

2. *WorldCom, Inc. v. FCC*, 288 F.3d 429, 434 (D.C.Cir.2002)

3. *WorldCom, Inc. v. FCC*, 288 F.3d at 431.

ment. Negotiations on such a new agreement shall commence no later than 45 days prior to the expiration of this Agreement.

The WUTC concluded that WorldCom satisfied the extension provision by initiating negotiations on a new interconnection agreement more than 45 days prior to the expiration date of the Agreement. Verizon argues that the WUTC erred by not interpreting the 45–day deadline to incorporate the statutory procedures for negotiation and arbitration under 47 U.S.C. § 252. According to Verizon, WorldCom's failure to comply with § 252 caused the extension to lapse.

Although Washington law permits the WUTC to consider extrinsic evidence even if contract terms are not ambiguous, it is not admissible for the purpose of adding to, modifying, or contradicting the terms of a written contract. The Agreement provided that its terms would be extended if, upon expiration, negotiations for a new agreement had commenced at least 45 days prior to that date. The negotiations having commenced more than 45 days prior to the date of expiration, the WUTC concluded that requiring WorldCom to also comply with the requirements of § 252 in order to avoid a lapse in that extension would have the effect of imposing additional extension terms. Accordingly, the WUTC's interpretation of the Agreement to require only that WorldCom initiate negotiations 45 days prior to the expiration date was not arbitrary and capricious.

■ Next, we reject Verizon's argument that the WUTC erred by interpreting the extension provision of the Agreement to apply to all interconnection arrangements, as opposed to only the physical connection between the parties' networks. Because Verizon's interpretation would have imposed a one-way obligation on WorldCom to continue terminating ISP-bound traffic originated by Verizon's customers without compensation, the WUTC concluded that the term "interconnection arrangements" included all arrangements in the Agreement. *Id.* Although it may be possible that the parties intended to extend only the physical interconnection arrangements beyond the expiration date, it was not arbitrary and capricious for the WUTC to interpret the extension provision as applying to all interconnection arrangements.

## IV.

■ Finally, we conclude that the WUTC's decision to assess penalties against Verizon was arbitrary and capricious and therefore reverse the district court's summary judgment upholding the penalty. The WUTC imposed penalties against Verizon for "unreasonable conduct" under sections 80.04.380 and 80.36.170 of the Washington Revised Code, concluding that it "subjected its competitor, WorldCom, to unfair and unreasonable disadvantage." By refusing to pay for ISP-bound traffic under the Agreement's reciprocal compensation provision because it claimed that the calls were not local but nevertheless billing its customers for this traffic as if the calls were local, Verizon's actions were construed by the WUTC and the district court as "trying to have it both ways" and therefore warranting penalties under Washington state law.

The reasons the WUTC supplied for the imposition of sanctions here – that Verizon took inconsistent and self-serving positions with respect to the interpretation of the Agreement – do not constitute sufficient grounds for imposing penalties. It simply does not follow from Verizon's attempt to characterize calls one way for the purpose of interpreting the reciprocal compensation and another way for customer billing that Verizon subjected WorldCom to unfair

**394**

treatment or even that it was attempting to cut off the fees that WorldCom was due.

The WUTC's justification for imposing penalties here does not even meet the standards that it has established for itself for determining when sanctions are appropriate.[4] Verizon's actions in support of its interpretation of federal law as it related to the Agreement do not merit sanctions under the WUTC's own standards. The WUTC's decision to impose sanctions in this case was arbitrary and capricious and we therefore vacate the sanctions imposed by the WUTC. AFFIRMED in part, REVERSED in part

---

4. In *MCIMetro Access Transmission Servs. Inc. v. U.S. W. Communications, Inc.,* 1999 WL 132851 (Feb. 10, 1999), the WUTC articulated eight factors to guide its decision whether to impose penalties:

whether (1) the offending conduct was associated with new requirements of first impression,

(2) the offending party should have known its conduct constituted a violation,

(3) the offending conduct was knowing or intentional,

(4) the offending conduct was gross or malicious,

(5) repeated violations occurred,

(6) the Commission previously had found violations,

(7) the offending conduct improved, and

(8) remedial steps were undertaken.

*MCIMetro,* WUTC No. UT–971063 (¶ 158); *see also Wash. Utils. & Transp. Comm'n v. Elec. Lightwave,* WUTC Nos. UT–001532, UT–001533, 2001 WL 514418, at *4 (Mar. 19, 2001) (citing *MCIMetro* ).