VERIZON DELAWARE,
INC., Plaintiff,

v.

AT & T COMMUNICATIONS OF DE-
LAWARE, LLC; TCG Delaware Val-
ley, Inc.; Public Service Commission
of Delaware; Arnetta McRae, in her
official capacity as Chair of the Pub-
lic Service Commission of Delaware;
Joshua M. Twilley, in his official ca-
pacity as Vice Chair of the Public
Service Commission of Delaware; Dr.
Donald J. Puglisi, in his official ca-
pacity as Commissioner of the Public
Service Commission of Delaware;
Joann T. Conaway, in her official ca-
pacity as Commissioner of the Public
Service Commission of Delaware; and
Jaymes V. Lester, in his official ca-
pacity as Commissioner of the Public
Service Commission of Delaware, De-
fendants.

No. CIV.A. 03–542–KAJ.

United States District Court,
D. Delaware.

July 16, 2004.

William E. Manning, Esquire; Klett, Rooney, Lieber & Schorling, Wilmington, DE, Counsel for Plainitff, Of Counsel: Aaron M. Panner, Esquire; Kellogg, Huber, Hansen, Todd & Evans, P.L.L.C., Washington, DC, Julie A. Conover, Esquire; Verizon Delaware Inc., Philadelphia, PA.

Wendie C. Stabler, Esquire; Saul Ewing LLP, Wilmington, DE, for Defendants AT & T Communications of Delaware, Inc. and TCG Delaware Valley, Inc., Of Counsel: Mark A. Keffer, Esquire, Oakton, VA.

Gary A. Myers, Esquire; Deputy Attorney General, Delaware Department of Justice Public Service Commission, Dover, DE, for Defendants.

## MEMORANDUM OPINION

JORDAN, District Judge.

### I. INTRODUCTION

This case stems from a May 6, 2003 ruling (the "Ruling") by the Public Service Commission of the State of Delaware (the "PSC") interpreting a telephone interconnection agreement (the "ICA" or "Agreement") between the plaintiff, Verizon Delaware Inc. ("Verizon"), on the one hand and, on the other, defendants AT & T Communications of Delaware, LLC and TCG Delaware Valley, Inc. (collectively "AT & T"). As is more fully described herein, the PSC determined that, under the reciprocal compensation provisions of the Agreement, Verizon owes AT & T approximately $2 million in payment for calls that originate with Verizon customers and then are routed to AT & T customers for further routing onto the internet. (See Docket Item ["D.I."] 1 at Ex. B, ¶ 8.) Verizon filed a Complaint against AT & T, the PSC, and each of the commissioners of the PSC, alleging that the PSC's ruling violates the federal Telecommunications Act of 1996, Pub.L. No. 104–104, 110 Stat. 56, 47 U.S.C. §§ 151–714 (the "Telecommunications Act" or the "Act"), because it is inconsistent with the ICA, is arbitrary and capricious, and "is not the result of reasoned decision-making." (Id. at ¶ 31.) Verizon further alleges that the PSC's decision deprives Verizon of its "rights, privileges, and immunities" under the law, in violation of 42 U.S.C. § 1983. (Id. at ¶ 34.) Presently before me is a motion by the PSC and its commissioners (the "PSC Defendants") seeking dismissal of the Complaint for failure to state a claim or, alternatively, an order of abstention to allow Delaware's state courts to determine "controlling state law questions." (D.I. 16; the "Motion to Dismiss".) Also before me are cross-motions for summary judgment (D.I. 26 and D.I. 30; the "Summary Judgment

Motions") filed by Verizon and AT & T, respectively.

I have jurisdiction in this case pursuant to both Section 252(e) of the 1996 Act, 47 U.S.C. § 252(e), and the provisions of 28 U.S.C. § 1331. For the reasons that follow, the PSC Defendants' Motion to Dismiss will be denied, as will Verizon's Summary Judgment Motion, while AT & T's Summary Judgment Motion will be granted in part and denied in part.[1]

## II. BACKGROUND

Congress passed the Telecommunications Act as part of the massive deregulation of the telecommunications industry. The Act is designed to overcome economic and regulatory barriers to entry in the market for local telephone service. Stated generally, where the market for providing such service had previously been the domain of regulated, local monopolies, known in the Act as Incumbent Local Exchange Carriers ("ILECs"), the new legal regime created by the Act mandates that would-be competitors, called Competing Local Exchange Carriers ("CLECs"), be given access to the infrastructure required to provide local service. *See Bell Atlantic–Delaware, Inc. v. McMahon,* 80 F.Supp.2d 218, 222 (D.Del.2000) (describing background of the Act and the infrastructure elements to which CLECs are given access).

Naturally, for CLECs to have access to the wired infrastructure of an area's ILEC, the ILEC and the CLECs must cooperate in connecting the CLECs to that infrastructure and in routing custom-

ers' telephone calls. *See* 47 U.S.C. § 251(a)(1) ("Each telecommunications carrier has the duty to interconnect directly or indirectly with the facilities and equipment of other telecommunications carriers."). To induce cooperation and to compensate those who cooperate, the Act also mandates the establishment of "reciprocal compensation arrangements for the transport and termination of telecommunications."[2] 47 U.S.C. § 251(b)(5); *see* 47 C.F.R. § 51.701(a) (addressing reciprocal compensation rules' applicability to local telecommunications traffic). The ILECs and CLECs, known generally as Local Exchange Carriers ("LECs"), are supervised in their interconnection and reciprocal compensation obligations by state public service commissions, such as the PSC. *See, e.g.,* 47 U.S.C. § 252(b)(4), (c), and (e). Not surprisingly, this regime of enforced cooperation has spawned numerous legal disputes, *see, e.g., Verizon Maryland, Inc. v. Public Service Comm'n of Maryland,* 535 U.S. 635, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002); *MCI Telecomm. Corp. v. Bell Atlantic–Pennsylvania,* 271 F.3d 491 (3d Cir.2001), *cert. denied,* 537 U.S. 941, 123 S.Ct. 340, 154 L.Ed.2d 247 (2002); *Bell Atlantic–Delaware,* 80 F.Supp.2d 218, and copious legal commentary, *see, e.g.,* Adam Candeub, *Network Interconnection and Takings,* 54 Syracuse L.Rev. 369 (2004); David Gilo, *A Market–Based Approach to Telecom Interconnection,* 77 S. Cal. L.Rev. 1 (2003); Chérie R. Kiser & Angela F. Collins, *Regulation on the Horizon: Are Regulators Poised to Address the Status of IP Telephony,* 11 CommLaw Con-

---

1. It is granted to the extent that it seeks approval of the PSC's decision that AT & T is entitled to reciprocal compensation on ISP-bound calls under the terms of the ICA. It is denied to the extent that it seeks an award of interest contrary to the PSC's holding.

2. "[A] reciprocal compensation arrangement between two carriers is one in which each of the two carriers receives compensation from the other carrier for the transport and termination on each carrier's network facilities of telecommunications traffic that originates on the network facilities of the other carrier." 47 C.F.R. § 51.701(e).

spectus 19 (2003). It is a regulatory scheme the Supreme Court has characterized as "decidedly novel," *AT & T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 385 n. 10, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999), and "surpassing strange." *Id.* at 378 n. 6, 119 S.Ct. 721.

The present case is another in the long line of lawsuits generated by the Act. Here, Verizon is the ILEC and AT & T is a CLEC. Since 1996, Verizon, then known as Bell Atlantic–Delaware, Inc., and AT & T, through a predecessor in interest known as Eastern Telelogic Corp., have been parties to the ICA, which they evidently entered intending to meet the requirements of the Act. (*See* D.I. 1 at ¶¶ 18–19; D.I. 15 at ¶¶ 18–19.) As required by the Act, *see* 47 U.S.C. § 252(e), the PSC reviewed and approved the ICA. (*Id.*) In February of 2002, AT & T filed a complaint with the PSC, alleging that, under the ICA, Verizon is required to pay reciprocal compensation for telecommunications traffic that originates with a Verizon customer and is then handed off to an internet service provider (an "ISP") for whom AT & T serves as carrier.[3] (*See* D.I. 1 at ¶ 24; D.I. 15 at ¶ 24.) More specifically, AT & T claims that the ICA requires reciprocal compensation for local calls and that calls to an ISP within the local calling area are local and therefore qualify for compensation. (*See* D.I. 61 at 5.) Verizon does not dispute that the ICA requires reciprocal compensation for local calls, but argues strenuously that ISP-bound calls are not local, that

because they end up on the worldwide internet they are clearly not the localized communications contemplated by the "local call" provisions of the ICA. (*See* D.I. 56 at 7–8.)

On May 6, 2003, the PSC issued its ruling on AT & T's complaint. (*See* D.I. 1 at Ex. B.) In its Findings, Opinion, and Order, the PSC reviewed the ICA and the regulatory history behind ISP-bound traffic. (*See, e.g., id.* at ¶¶ 12–16, 19 n. 25, 21 n. 26, 23 n. 27, 25.) Applying Delaware contract law principles (*id.* at ¶¶ 12, 24), the PSC concluded that, "with respect to the reciprocal compensation question, ... [Verizon] was, under the ICA, obligated to pay the contractual reciprocal compensation rate for ISP-bound traffic routed, before June, 2001, to an ISP customer served by AT & T's network." (*Id.* at ¶ 8 (footnote omitted).) The present action, challenging the PSC's conclusion, was filed shortly thereafter.

## III. THE MOTION TO DISMISS

### A. *Standard of Review*

The PSC Defendants' Motion to Dismiss invokes Federal Rule of Civil Procedure 12(b)(6). A motion under that rule should only be granted if, "taking the allegations of the complaint as true, and liberally giving the plaintiff the benefit of all inferences that may be drawn therefrom, it appears beyond doubt that the plaintiff can prove no set of facts upon which relief could be granted." *Pennsylvania ex rel.*

---

**3.** AT & T limited its claim for relief to compensation it calculated was due prior to June 14, 2001. (*See* D.I. 1 at Ex B. ¶ 2, n. 5.) It did so, it said, to "limit the complexity and to facilitate resolution of this dispute." (*Id.*) That date coincides with the issuance of an FCC ruling, *In re Implementation of Local Competition Provisions in Telecommunications Act of 1996*, 16 F.C.C.R. 9151, 2001 WL 455869 (F.C.C.2001) (the "ISP Remand Order"; reproduced at D.I. 52, p. NRM 056),

remanded sub nom. *WorldCom, Inc. v. FCC*, 288 F.3d 429 (D.C.Cir.2002), *cert. denied sub nom. Core Communs., Inc. v. FCC*, 538 U.S. 1012, 123 S.Ct. 1927, 155 L.Ed.2d 848 (2003), which the FCC issued after the United States Court of Appeals for the District of Columbia Circuit reversed and remanded an earlier FCC ruling regarding the treatment of ISP-bound traffic. *See Bell Atlantic Telephone Companies v. FCC*, 206 F.3d 1 (D.C.Cir. 2000).

*Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 175 (3d Cir.1988) (citation omitted). The moving parties bear the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir.1991); *Locklear v. Remington,* 2003 WL 21003722 at *1 (D.Del. Apr.28, 2003). However, "[t]he pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 340 (2d ed.1990)).

## B. *Discussion*

The PSC Defendants assert that Verizon's Complaint must be dismissed because Verizon has failed to state a claim under federal law and because "[t]he PSC and its Commissioners are immune under the structure of the Constitution and its Eleventh Amendment from any action that seeks redress premised on the claim that, in interpreting the interconnection agreement, they did not properly follow or apply Delaware law."[4] (D.I. 16 at 2.) This is not the first time the PSC has invoked the Eleventh Amendment to avoid judicial review of its decisions under the Telecommunications Act. *See Bell Atlantic–Delaware,* 80 F.Supp.2d at 228, 233 (noting and rejecting PSC's generalized assertion of Eleventh Amendment immunity). Although some of the lyrics are different this time, the tune is essentially the same and still does not ring true.

■ As was noted in *Bell Atlantic–Delaware,* cases such as this are in the nature of an appeal from an agency decision, and it is "odd indeed for an administrative agency to assert immunity from judicial review of its decisions." *Id.* at 228 (footnote omitted). More to the point, however, both this court and the Third Circuit have made it abundantly clear that, because the State of Delaware has chosen to participate through the PSC in the federal regulatory scheme established by the Act, the decisions rendered by the PSC in exercising that Congressionally delegated power are subject to review in federal court. *MCI Telecomm. Corp.,* 271 F.3d at 510 (holding that the "opportunity for the states to exercise federal power" by having a continued role in regulating local telecommunications came with a condition attached: "the submission to suit in federal court"); *Bell Atlantic–Delaware,* 80 F.Supp.2d at 233 ("Because the State of

---

4. In their Motion to Dismiss, the PSC Defendants also state that the PSC, "as an instrumentality of the State of Delaware, is not subject to an action under ... [42] U.S.C. § 1983 because the PSC is not a 'person' under that statutory provision." (D.I. 16 at 1–2.) However, none of the parties expended any discernable effort briefing or arguing that defense, although there is authority to support it. *See Jemzura v. Public Service Comm'n,* 971 F.Supp. 702, 706 (N.D.N.Y.1997) (holding that, under authority of *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), neither the State nor state public service commission officials acting in their official capacities are "persons" subject to suit under § 1983). Presumably they did not do so because it is clear under controlling authority that those defendants are subject to suit under 47 U.S.C. § 252(e)(6), *see MCI Telecomm. Corp.,* 271 F.3d at 510–11 (holding that states participating in telecommunications regulation after passage of the Act have waived their sovereign immunity with respect to their regulatory decisions), and because the relief being sought under Count I of the Complaint (the § 252(e)(6) count) is the same as that being sought under Count II of the Complaint (the § 1983 count). As have the parties, I too will forego any further consideration of whether the PSC Defendants are amenable to suit under § 1983, since I hold that they are subject to suit under § 252(e)(6), and the assertion of the § 1983 claim is therefore superfluous.

Delaware has accepted [state participation in federal telecommunications regulation], its waiver of sovereign immunity may be presumed.").

It does not alter that conclusion to argue, as the PSC Defendants now do, that because interpretation of the ICA involved principles of Delaware contract law their regulatory decision-making is exempt from federal judicial review. (*See* D.I. 16 at 2–3; D.I. 17 at 18–33); *see also Michigan Bell Tel. Co. v. MCIMetro Access Transmission Servs., Inc.*, 323 F.3d 348, 357 (6th Cir.2003) ("federal courts have jurisdiction under Section 252 to review state commission interpretations for compliance with state law"); *BellSouth Telecomm., Inc. v. MCImetro Access Transmission Servs., Inc.*, 317 F.3d 1270, 1278 (11th Cir.2003) ("it is consistent with the . . . [Act] to have state commissions interpret contracts and subject their interpretations to federal review in the district courts"); *cf. United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 727–28, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) ("Controversies directly affecting the operations of federal programs, although governed by federal law, do not inevitably require resort to uniform federal rules. Whether to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy . . . .").

Verizon aptly notes that its "fundamental claim is that, in requiring Verizon to pay reciprocal compensation on ISP-bound traffic, the PSC acted contrary to the terms of the governing interconnection agreement." (D.I. 58 at 16.) Since such agreements, like the ICA in this case, are the product of federal statute, *see* 47 U.S.C. § 252(a)(1) (allowing ILECs and CLECs to enter into binding interconnection agreements to meet obligations imposed by the Act), it is necessarily the case that a party aggrieved by the decision of a regulator, acting under Congressionally delegated power to interpret those agreements, can petition a federal court for relief, regardless of whether the regulator's decision is rooted in state law principles. Were it otherwise, the specific grant of the right to bring suit, which is set forth in § 252(e)(6) of the Act,[5] would be seriously undermined and the clear Congressional intent to provide access to the federal courts would be frustrated. *See Verizon Maryland, Inc.*, 535 U.S. at 644, 122 S.Ct. 1753 (noting that review of a state public service commission's decisions pursuant to the Act is supported by general grant of federal jurisdiction set forth in 28 U.S.C. § 1331 and that § 252(e)(6) "reads like the conferral of a private right of action"); *New England Tel. & Tel. Co. v. Conversent Communs. of Rhode Island*, 178 F.Supp.2d 81, 88 (D.R.I.2001) (in case involving interpretation of reciprocal compensation for ISP-bound traffic, the public service commission had "decided the meaning of a key term of the [interconnection] Agreement," and, therefore, the commission's "decision has a sufficient nexus to the Agreement to be a 'determination' under § 252 and . . . the Court has jurisdiction to review the . . . decision"). Moreover, since the parties to the ICA explicitly agreed that it would be governed by Delaware law [6] (*see* D.I. 1 at Ex. A

---

**5.** That section of the Act provides as follows: "In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section . . . ." 47 U.S.C. § 252(e)(6).

**6.** The ICA's "Choice of Law" provision reads in its entirety: "The construction, interpretation and performance of this Agreement shall be governed by and construed in accordance with the laws of the state in which this Agree-

¶ 29.5), an exception to federal jurisdiction in cases in which state contract law is implicated would effectively swallow the right to bring an action in federal court and render that right illusory, which is an intolerable result.

 The PSC Defendants' fall-back position is that, even if I determine that Verizon has a federal cause of action, I should nevertheless abstain from exercising jurisdiction and direct Verizon to pursue an action in the Delaware Superior Court,[7] so that a Delaware court can review the PSC's decision. (*See* D.I. 16 at 3; D.I. 17 at 34–38.) Their arguments on this point too are unpersuasive.

First, they assert that general principles of federalism dictate allowing the state courts to review the PSC's decision. That assertion, of course, simply ignores that Congress has specifically granted to parties such as Verizon the right to bring their disputes involving telecommunications regulation to federal court. 47 U.S.C. § 252(e)(6). General principles of comity or federalism do not override that express statement of Congressional intent, just as they do not override the general grant of jurisdiction provided by 28 U.S.C. § 1331 to review precisely the type of question involved in this case. *Cf. Verizon Maryland, Inc., supra,* 535 U.S. at 641–42, 122 S.Ct. 1753 (declining to answer the question of whether federal courts have jurisdiction under § 252 to review state public service commission's decision on

payment of reciprocal compensation for ISP-bound traffic, because " § 252(e)(6) ... at least does not *divest* the district courts of their authority under 28 U.S.C. § 1331 to review the Commission's order for compliance with federal law" (emphasis in original)); *Michigan Bell Tel. Co.,* 323 F.3d at 356–57 (holding that federal courts have original, rather than supplemental, jurisdiction to review state public service commission's application of state law in interpreting an interconnection agreement). Surpassingly strange and subject to criticism though the regulatory construct may be, *see supra* at p. 577 (quoting *AT & T Corp.,* 525 U.S. at 378 n. 6, 119 S.Ct. 721), it has been upheld by the Supreme Court in the face of vigorous attack, including challenges to the unprecedented role given to state public service commissions to operate, in effect, as deputized federal regulators. *See id.* (stating that "if the federal courts believe a state commission is not regulating in accordance with federal policy they may bring it to heel"); *see also MCI Telecommunications Corp. v. Illinois Bell Telephone Co.,* 222 F.3d 323, 343 (7th Cir.2000) ("[T]he states are not merely acting in an area regulated by Congress; they are now voluntarily *regulating on behalf of Congress.*") (emphasis in original). Since it was within Congress's power to create that construct, generalized concerns for federalism, as important as that principle is, cannot be permitted to dismantle it.[8]

---

ment is to be performed, except for its conflict of laws provisions. In addition, insofar as and to the extent federal law may apply, federal law will control." (D.I. 1 at Ex. A ¶ 29.5.)

**7.** Such a proceeding is already pending, Verizon having filed in the Delaware Superior Court a case captioned *Verizon Delaware Inc. v. AT & T Comm. of Delaware, LLC,* C.A. No. 03A–06–001 (JTV) (Del.Super. Kent Co.) on the same day it filed the present action.

However, that case has been stayed pending this court's determination on the question of jurisdiction to review state agency enforcement of ICAs. (*See* D.I. 67 at Ex. A ¶ 10; *see also* D.I. 70 (Transcript from Feb. 4, 2004 oral argument) at 5:23–6:22.)

**8.** The decision that most nearly supports the position espoused by the PSC Defendants here is *Illinois Bell Telephone Co. v. Worldcom Technologies, Inc.,* 179 F.3d 566 (7th Cir.1999), in which the Seventh Circuit stated

Second, the PSC Defendants warn that federal court review of a state agency's application of state contract law will deprive the state of the opportunity to control the development of its own law. (See D.I. 17 at 35; D.I. 70 (Transcript of Feb. 4, 2004 oral argument) at 21:11–25.) While I understand and fully appreciate the concern for federalism that again lies behind this argument, the fact remains that these regulators are acting in a uniquely "federalized" role.[9] Moreover, understandable though the PSC Defendants' concern is, it is in this instance unduly alarmist. Federal courts regularly interpret and apply state law in the context of diversity-of-citizenship cases, and have done so for a very long time. Somehow, through it all, the states have managed to maintain a firm grip on the development of their common law. I am confident that my review in this case of the PSC's application of fundamental principles of contract interpretation[10] threatens neither the foundations of federalism nor an inalterable change in the contract law jurisprudence of our state.

Finally, there is some question of whether the state court could properly hear the case, even if I were inclined to abstain. At least one court has noted the statement in § 252(e)(4) that "[n]o State court shall have jurisdiction to review the action of a

---

that "[a] decision 'interpreting' an agreement contrary to its terms creates a ... problem ... under the law of contracts, and therefore one for which a state forum can supply a remedy." Id. at 574. The court went on to decide that the best way to deal with the challenges posed by the Act's unusual assignment of regulatory roles is, "every time a carrier complains about a state agency's action concerning an agreement, it must start in federal court (to find out whether there has been a violation of federal law) and then may move to state court if the first suit yields the answer 'no.' " Id. I am constrained to agree with that court's own assessment that "this system may not have much to recommend it," id., an assessment which may explain why, in one way or another, the decision has been rejected by the Fifth, Sixth, Eighth, Ninth, and Tenth Circuits. See, e.g., Southwestern Bell Tel. Co. v. Public Util. Comm'n, 208 F.3d 475 (5th Cir.2000); Michigan Bell Tel. Co. v. MFS Intelenet of Michigan, Inc., 339 F.3d 428 (6th Cir.2003); Southwestern Bell Tel. Co. v. Connect Communications Corp., 225 F.3d 942 (8th Cir.2000); Verizon Northwest Inc. v. WorldCom, Inc., 61 Fed.Appx. 388 (9th Cir. 2003); Southwestern Bell Tel. Co. v. Brooks Fiber Communications of Oklahoma, Inc., 235 F.3d 493 (10th Cir.2000). I too decline to follow it.

9. That unique role is what distinguishes cases such as this and others under the Act from the case of Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), on which the PSC Defendants so heavily rely (see D.I. 17 at 22, 29, 35, 36; D.I. 38 at 2, 9, 10). In Pennhurst, the Supreme Court declared that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." 465 U.S. at 106, 104 S.Ct. 900. Under the Act, however, those officials are not acting in the traditional role of state officials, presiding over state-regulated behavior. They are, on the contrary, acting with delegated federal power and assisting in the supervision of federally-regulated behavior. The PSC itself recognized that when it stated in the Ruling at issue here that "[t]he federal courts and the FCC have construed 47 U.S.C. § 252(e) to confer on state utility commissions the authority to interpret and enforce ... interconnection agreements[,]" and that, pursuant to a Delaware statute, 26 Del. C. § 703(4), it is authorized "to accept the contract construction authority conferred ... by the federal courts and the FCC's interpretation of federal § 252." (D.I. 1 at Ex. B, ¶ 9, n. 11.)

10. The state law at issue consists of principles of contract interpretation that are certainly not unique to Delaware law: contract construction begins with the language of the contract, with the plain meaning of its terms controlling (D.I. 1 at Ex. B ¶ 15 & n. 20); "the agreement must be construed as a whole, giving effect to all provisions therein" (Id. at ¶ 25 & n. 29).

State commission in approving or rejecting an agreement under this section[,]" and concluded that "state courts are precluded from hearing appeals from state commissions" on the interpretation of interconnection agreements. *New England Tel. & Tel. Co.,* 178 F.Supp.2d at 87.

For all of the foregoing reasons, the PSC Defendants' Motion to Dismiss is denied.

## IV. THE MOTIONS FOR SUMMARY JUDGMENT

### A. *Standard of Review*

Both Verizon and AT & T have moved for summary judgment. (D.I. 26; D.I. 30.) Summary judgment is warranted when a moving party demonstrates that "there is no genuine issue as to any material fact and ... the moving party is entitled judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (explicating summary judgment standard).

The Summary Judgment Motions require me to review the May 6, 2003 Ruling of the PSC. In reviewing decisions of the PSC made pursuant to the Act, it is appropriate to "adopt the standards employed in reviews of federal agency actions." *Bell Atlantic–Delaware,* 80 F.Supp.2d at 227. That means accepting the administrative record that has been created, reviewing decisions of law *de novo,* and, when examining the PSC's application of law to facts, applying an "arbitrary and capricious" standard of review. *Id.*

In addressing state law issues in the interpretation of an interconnection agreement, as I am called upon to do in this case, the Sixth Circuit appeared to take a different approach. It stated that it was adopting "a standard of review that ensures state commissions reasonably apply state law." *Michigan Bell Telephone Co.,* 323 F.3d at 357. It went on to say, "[w]e give deference to a state commission's resolution of state law issues and apply an arbitrary and capricious standard in our review." *Id.* The court thereby created, it seems, a bifurcated standard for purely legal questions: if they involve matters of federal law, the review presumably would be according to the familiar *de novo* standard for such questions, but, if they involve state law questions, the review would be deferential.

■ I must respectfully disagree with the Sixth Circuit's approach, even though I have the utmost respect for that court and for the PSC, its legal advisors, and hearing officers. I do not believe that different standards of review are warranted for questions of state and federal law. Having determined that I am required by the unusual provisions of the Act to cross the typical boundaries of deference separating state and federal actors, I am not inclined to take a half-step back by adopting a more deferential standard of review on questions of law. *See U.S. West Communications v. MFS Intelenet, Inc.,* 193 F.3d 1112, 1117 (9th Cir.1999) ("We apply the same standard the district court should apply, considering de novo whether the agreements are in compliance with the Act and the implementing regulations, ... and considering all other issues under an arbitrary and capricious standard.") (citation omitted); *cf. Starpower Communications LLC v. FCC,* 334 F.3d 1150, 1154–55 (D.C.Cir.2003) (noting parties' dispute over appropriate standard of review, whether *de novo* because ruling on a matter purely of state contract law or deferential because reviewing terms common to the telecommunications industry as to which the FCC has special expertise, and declining to choose either standard because "we would resolve this issue in the same manner re-

gardless [of] whether we owe the Commission any deference"). Again, the PSC is acting here in a deputized federal role, not as a typical state actor. Moreover, even were it acting in its more typical role as a purely state regulator, its responsibility would be the application of accepted principles of Delaware contract law, not the creation of new principles. Persuasive authority on the principles of Delaware contract law is no more or less persuasive for its being cited by the PSC.

Of course, once outside the realm of purely legal questions, a "court is not free to substitute its judgment for the agency's ...; it must uphold a decision that has substantial support in the record as a whole even if it might have decided differently as an original matter." *GTE South, Inc. v. Morrison*, 199 F.3d 733, 746 (4th Cir.1999) (citation and internal quotation marks omitted); *see also Omnipoint Corp. v. Zoning Hearing Bd.*, 181 F.3d 403, 409 (3d Cir.1999) (". . . [W]e apply the substantial evidence standard as we would to the decision of a federal administrative body."). When looking at how the PSC applied the law to the facts, I would not presume to overturn the PSC's actions unless they could fairly be characterized as arbitrary and capricious. *See supra* at p. 582; *see also* D.I. 70 at 35:6–17 (AT & T's counsel asserting that the standard of review is "arbitrary and capricious", and Verizon's counsel agreeing that "[t]o the extent that it doesn't involve an interpretation of federal law, that is correct."). Thankfully, the Act "does not require the Court to sit as a super public utilities commission." *GTE South, Inc.*, 199 F.3d at 745.

### B. *Discussion*

Reciprocal compensation for ISP-bound traffic has caused contention for years.

No matter what label one hangs on calls bound for the internet, they are clearly not the kind of "local call" once familiar to those of us who grew up with rotary phones. At a practical level, the most pertinent difference is that calls to ISPs do not follow typical calling patterns. "Internet calls tend to be longer than average local calls and ISPs do not 'call back' at the same volume, if at all." *New England Tel. & Tel. Co.*, 178 F.Supp.2d at 84. That asymmetric character of ISP-bound traffic is the genesis of the financial friction that has caused disputes such as this to flare up repeatedly.

> The difference in the calling pattern of regular telephone users and Internet telephone users creates an imbalance that disrupts a basic assumption behind reciprocal compensation: that the carriers' interconnection use will be roughly balanced. In other words, if ISP-bound traffic is local, some incumbent local exchange carriers are forced to compensate competing carriers with ISP clients, without very much likelihood that a similar payment will inure to the incumbent's benefit.

*Id.* The FCC has recognized that and, as Verizon emphasizes (D.I. 56 at 2), has decried the consequence that "Internet usage has distorted the traditional assumptions because traffic to an ISP flows exclusively in one direction, creating an opportunity for regulatory arbitrage and leading to uneconomical results." *See ISP Remand Order, supra* p. 577 n. 3, at ¶ 21.

Nevertheless, and not for want of trying, *see id.*,[11] the FCC has not yet issued a final order declaring that, for purposes of determining reciprocal compensation obligations, ISP-bound traffic is not to be con-

---

11. The FCC's orders on whether ISP-bound traffic should be considered local have twice been remanded by the D.C. Circuit, *see supra* at p. 577 n. 3.

sidered "local". Instead, the FCC has declared that, despite its own conclusion that ISP-bound traffic is largely interstate in nature, *ISP Remand Order* at ¶¶ 14–15, it found "no reason to interfere with state commission findings as to whether reciprocal compensation provisions of interconnection agreements apply to ISP-bound traffic, pending adoption of a rule establishing an appropriate interstate compensation mechanism." Declaratory Ruling in CC Docket No. 96–98 and Notice of Proposed Rulemaking in CC Docket No. 99–68, *Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, 14 F.C.C.R. 3689, 1999 WL 98037 (F.C.C.1999) (the *"Declaratory Ruling"*; reproduced at D.I. 52, p. NRM 024) at ¶ 21. The FCC went on in that *Declaratory Ruling* to note that, "in the absence of any contrary [FCC] rule, parties entering into interconnection agreements may reasonably have agreed, for the purposes of determining whether reciprocal compensation should apply to ISP-bound traffic, that such traffic should be treated in the same manner as local traffic." *Id.* at ¶ 24. The FCC then described factors for state commissions to apply when interpreting the intent of contracting parties regarding compensation for ISP-bound traffic, saying, "state commissions have the opportunity to consider all relevant facts, including the negotiation of the agreements in the context of this Commission's [i.e., the FCC's] longstanding policy of treating this traffic as local, and the conduct of the parties pursuant to those agreements." *Id.*

### i. The Hearing Examiner's Recommendation and the PSC's Decision

The PSC undertook that analysis in the present dispute. First, it referred the question to a hearing examiner "to conduct appropriate proceedings and to prepare a recommended decision . . . ." (D.I. 1 at Ex. B, ¶ 5.) The hearing examiner reviewed AT & T's and Verizon's summary judgment arguments and, quite rightly, noted that the question before the PSC was not the policy question of how to treat ISP-bound traffic in the future, but was simply what the parties intended when they entered into the ICA. (D.I. 51 at JA111, ¶ 17.) The examiner identified the most relevant portions of the ICA as follows: [12]

> 5.7.2 The Parties shall compensate each other for the transport and termination of Local Traffic in an equal and symmetrical manner at the rates provided . . .

> 5.7.5 The designation of Traffic as Local or Toll for purposes of compensation shall be based on the actual originating and terminating points of the complete end-to-end call, regardless of the carrier(s) involved in carrying any segment of the call.

> 1.61 Reciprocal Compensation is As Described in the Act, and refers to the payment arrangements that recover costs incurred for the transport and termination of Local Traffic originating on one Party's network and terminating on the other Party's network.

> 1.44 "Local Traffic," means traffic that is originated by a Customer of one Party on that Party's network and terminates to a Customer of the other Party on the other Party's network, within a given local calling area, or expanded area service ("EAS") area, as defined in BA's effective Customer tariffs, or, if the Commission has defined local calling areas applicable to all LECs, then as defined by the Commission.

---

12. The quoted sections of the ICA are listed in the order chosen by the hearing examiner.

1.7 "As Described in the Act" means as described in or required by the Act and as from time to time interpreted in the duly authorized rules and regulations of the FCC or the Commission.

(*Id.* at JA112, ¶ 19.)

In the examiner's view, the language of those provisions does not clearly answer the question of the parties' intent respecting reciprocal compensation for ISP-bound traffic. (*Id.* at JA113, ¶ 20.) Nevertheless, the examiner found that the language and structure of the ICA did provide strong evidence of the parties' intent. The examiner noted that in an earlier case, PSC Docket No. 98–540 (the "GNAPs Arbitration", reproduced at JA392), the PSC had interpreted language that is precisely the same as the provisions now at issue and had reached conclusions about intent that are instructive here. The PSC had observed in the GNAPs Arbitration that the lack of any mechanism for metering or otherwise segregating ISP-bound traffic from local traffic, and the lack of any separate payment terms for ISP-bound traffic, were proof that the parties "must have anticipated treating ISP-bound traffic as local traffic for purposes of reciprocal compensation." (*See id.* at JA 114, ¶ 22; *see also id.* at JA107, ¶ 9; JA113–14, ¶ 21.) The examiner noted that the same logic and conclusion applied here. (*Id.* at JA114, ¶ 22.)

As further intrinsic evidence of the parties' intent in this case, the hearing examiner noted that interpreting § 1.61 to exclude ISP-bound traffic "would eliminate any need for Section 5.7." (*Id.* at JA119, ¶ 32.) In other words, if the statement in § 1.61 that "Reciprocal Compensation is As Described in the Act" were sufficient to fully describe the meaning of "reciprocal compensation," then the specific provisions of § 5.7, including §§ 5.7.2 and 5.7.5, which describe how reciprocal compensation for local traffic is to be handled, would be surplusage. Citing *E.I. du Pont de Nemours and Co. v. Shell Oil Co.*, 498 A.2d 1108 (Del.1985), the examiner concluded that such an interpretation was untenable, because, "[u]nder Delaware law, in order to uphold the intention of the parties, the agreement must be construed as a whole, giving effect to all provisions thereof." (D.I. 51 at JA119, ¶ 32.) According to the examiner, the content of § 5.7 further undermines Verizon's position because, while that section "covers, in detail, the parties' obligations to each other for reciprocal compensation[,]" it does not exclude ISP-bound traffic, even though it does "specifically exclude other types of traffic, such as Switched Exchange Access Service and Toll Traffic, under 5.7.3, which ... suggests that the parties would have specifically excluded ISP-bound traffic, had they intended to do so." (*Id.* at JA119, ¶ 31.)

The examiner also looked to extrinsic evidence and specifically mentioned Verizon's and AT & T's course of dealing to shed light on their intent. According to the examiner, the parties entered into the ICA on September 13, 1996, and Verizon in fact paid reciprocal compensation on ISP-bound traffic in accordance with the ICA until April 16, 1999. (*Id.* at JA116, ¶ 26 & n. 16.) When Verizon discontinued its payments, it had to create a method for estimating the volume of ISP-bound traffic. It took the position that any traffic to an AT & T customer that exceeded a 2:1 ratio of terminating to originating minutes was ISP-bound traffic. (*See id.* at JA114–15, ¶ 23.) In the examiner's view, those facts indicated that the parties had not contemplated a separate scheme for addressing ISP-bound traffic but rather had intended to deal with it simply as local traffic. (*See id.*) Citing *Artesian Water Co. v. State Dept. of Highways & Transp.*, 330 A.2d 441 (Del.1974), the examiner de-

clared the parties' course of dealing to be particularly persuasive because, "the conduct of the parties holds a prominent position under the rules of contract construction [in Delaware law]." (D.I. 51 at JA117, ¶ 28 & n. 18.)

Those same facts were also key to the examiner's reasons for distinguishing an FCC decision that Verizon relied upon heavily before the PSC and also trumpets in this court (*see, e.g.,* D.I. 1 at ¶¶ 28–29; D.I. 56 *passim*). In *Starpower Communications, LLC v. Verizon South Inc.,* 17 F.C.C.R. 6873, 2002 WL 518062 (F.C.C. 2002) (reproduced at JA215), *remanded sub nom. Starpower Communications LLC v. FCC,* 334 F.3d 1150 (D.C.Cir.2003), the FCC, standing in the stead of the Virginia state regulatory authority, ruled that reciprocal compensation provisions with identical language to the provisions here "clearly and unambiguously did not require reciprocal compensation for ISP-bound traffic." 334 F.3d at 1154.[13] The hearing examiner in the present dispute, however, noted that, even in so ruling for Verizon, the FCC had recognized that "the conduct of the parties pursuant to the interconnection agreement was a material fact." (D.I. 51 at JA116, ¶ 27 (quoting ¶ 37 of FCC's *Starpower* decision, JA230).) The examiner emphasized that the parties in the *Starpower* case, unlike Verizon and AT & T here, had disputed from the very outset the treatment of ISP-bound traffic as local traffic. (*Id.* at JA116, ¶ 26 (citing ¶¶ 5, 8 of FCC's *Starpower* decision, JA216, JA218).)

To further distinguish the FCC's *Starpower* decision, the examiner said,

in *Starpower* the FCC acknowledges that state commissions may continue to consider the factors identified in its *ISP Declaratory Ruling* as relevant to dis-

putes regarding ISP-bound traffic. In addition to considering the FCC's "long-standing policy of treating [ISP-bound] traffic as local," those factors include: (1) whether Verizon ... serves ISPs out of an intrastate tariff; (2) whether revenues associated with those services are booked as intrastate or interstate revenues; (3) whether the parties made efforts to meter or segregate ISP-bound traffic; (4) whether Verizon ... includes calls to ISPs in local telephone charges (when billing by message units); and (5) whether the carriers will be compensated for calls to ISPs if such calls are not subject to reciprocal compensation. As noted by AT & T, and not specifically denied by Verizon ..., each of these factors favors a conclusion that in Delaware ISP-bound traffic constitutes local traffic for compensation purposes.

(*Id.* at JA117–18, ¶ 29 (citations omitted).)

Finally, the hearing examiner reviewed Verizon's contention that the parties always intended to have the ICA strictly track the requirements of federal law, which has never required reciprocal compensation for ISP-bound traffic. To support that contention, Verizon submitted the affidavit of the individual who negotiated the ICA on its behalf. (*Id.* at JA118, ¶ 30.) The examiner found the argument unpersuasive, both because the FCC has made it clear that the payment of reciprocal compensation for ISP-bound traffic is fully consistent with federal law (*see Declaratory Order* at ¶ 24; *ISP Remand Order* at ¶ 15) and because, as previously noted (*supra* at 585–586), the examiner found the language of the ICA itself indicated an intent to treat ISP-bound traffic as local. (*See* D.I. 51 at JA118–19, ¶¶ 30–31.)

---

13. As further discussed herein, *infra* at pp. 587–588, the D.C. Circuit squarely rejected

that conclusion by the FCC. *Starpower,* 334 F.3d at 1155, 1157.

On January 7, 2003, the PSC sat to consider the hearing examiner's recommended decision. (D.I. 1 at Ex. B, ¶ 8.) "After hearing oral presentations by the parties and after deliberating, the [PSC] determine[d] to accept all of the ultimate recommendations of the Hearing Examiner." (*Id.*) In its thorough, twenty-six page Findings, Opinion, and Order, the PSC reviewed again the parties' arguments and reiterated the reasoning of the examiner for accepting or rejecting them. It gave particular emphasis to its having previously reviewed the same reciprocal compensation language in the GNAPs Arbitration, saying it had rendered a decision that Verizon gave no persuasive reason to think was incorrect. (*Id.* at ¶¶ 17–19, 26.) Indeed, noted the PSC, "the facts here support the reasoning employed in the GNAPs Arbitration decisions, by highlighting the significance of the absence in the ICA of terms that call for segregation of ISP-bound traffic." (*Id.* at ¶ 19.) It also rejected AT & T's effort to obtain an award of interest on the unpaid reciprocal compensation. AT & T had argued that, in light of the PSC's own earlier decisions and other precedent, Verizon's position that it did not owe reciprocal compensation for ISP-bound traffic could not be viewed as giving rise to a *bona fide* dispute. (*See id.* at ¶ 28.) The PSC agreed with the examiner, however, that there was a *bona fide* dispute, and therefore an interest award was not appropriate, "given that ISP-bound traffic is not specifically identified in the ICA and because of the evolving nature of the FCC's position and rationale on the ISP traffic issue." (*Id.*)

*ii. The Parties' Arguments and This Court's Decision*

 In the present case, the parties again basically restate the positions that they took before the hearing examiner and the PSC. This time, of course, they adjust their presentations to address the extensive work product of the examiner and the PSC, but the upshot is the same, with Verizon arguing that the FCC's *Starpower* analysis is overwhelmingly persuasive and with AT & T arguing that, except for the question of interest on unpaid reciprocal compensation, the PSC got it right and Verizon should be estopped from arguing the point again.[14] Despite the reams of paper filed in this case, the parties are arguing essentially the same points and, after my review of the record and the law, they are ending up with the same result. I am persuaded that the examiner and the PSC were entirely correct.

At the outset, I disagree with Verizon's assertion that the PSC made its decision on the premise that the ICA unambiguously requires reciprocal compensation for ISP-bound traffic (*see* D.I. 56 at 1–2). On the contrary, the examiner's report and the PSC's decision explicitly note the ambiguity in the ICA, which raises the need to examine both intrinsic and extrinsic evidence to determine the intent of the parties. (*See, e.g.,* D.I. 51 at JA113, ¶ 20; D.I. 1 at Ex. B, ¶ 16.) Verizon itself emphasizes the error in its assertion by quoting the PSC's statement that "whether the [ICA] 'excludes ISP-bound traffic from

14. I need not address AT & T's estoppel arguments, since, even if Verizon is not estopped from challenging the reciprocal compensation obligation under these circumstances, I conclude that Verizon loses on the merits. I do, however, note the estoppel arguments for purposes of rejecting AT & T's demand for interest under the ICA on unpaid reciprocal compensation. The PSC heard AT & T's estoppel arguments and concluded that an award of interest was not in order because in fact there was a *bona fide* basis for Verizon to raise the dispute it did. (*See* D.I. 1 at Ex. B, ¶ 28.) For the reasons given by the PSC, I agree.

"Local Traffic" ... *cannot be clear from the ... language itself.*'" (D.I. 56 at 37 (quoting D.I. 1 at Ex. B, ¶ 16; emphasis Verizon's).) It is, rather, Verizon that hangs its entire case on the notion that the ICA is unambiguous. Verizon must take and does take the position that the ICA unambiguously precludes the payment of reciprocal compensation on ISP-bound calls, because only in that instance can one ignore the potent extrinsic evidence of intent that goes against Verizon, most significantly Verizon's own course of conduct under the ICA in paying reciprocal compensation year in and year out.

However, the no-ambiguity premise that Verizon adopts is simply not credible. At least one thing is perfectly clear about the ICA, and that is its lack of clarity on this point. As the D.C. Circuit observed in examining virtually identical language and rejecting the FCC decision on which Verizon has staked its case, the provisions at issue "are models of ambiguity with respect to reciprocal compensation for ISP-bound traffic." *Starpower*, 334 F.3d at 1157. Because the language is subject to more than one interpretation, *see id.*, it was entirely proper for the examiner and the PSC to look at the structure and language of the document and, beyond that, to extrinsic evidence in their effort to discern intent. They did so, including examining Verizon's evidence, which they found wanting.[15] Their analysis and conclusions are sound.

## V. CONCLUSION

I make no comment on the wisdom of a public policy decision to treat ISP-bound traffic as "local" for purposes of reciprocal compensation. That issue is clearly open to vigorous debate. But while this case implicates policy questions, it must be decided on the law as it currently stands. On that basis, the motions are decided as set forth herein. An appropriate Order will follow.

### ORDER

For the reasons set forth in the Memorandum Opinion issued today in this action, it is hereby ORDERED that

(1) The Motion of the Public Service Commission and Its Commissioners to Dismiss for Failure to State a Claim for Relief or, Alternatively, to Request that the Court Abstain to Allow the State Courts to Determine Controlling State Law Questions (Docket Item ["D.I."] 16) is DENIED;

(2) Plaintiff Verizon Delaware Inc.'s Motion for Summary Judgment (D.I.26) is DENIED; and

(3) Defendants AT & T Communications of Delaware, Inc. and TCG Delaware Valley, Inc.'s Motion for Summary Judgment (D.I.30) is GRANTED to the extent that it seeks a ruling that plaintiff is liable for unpaid reciprocal compensation for ISP-bound traffic, in accordance with the ruling of the Public Service Commission, and is DENIED to the extent that it seeks a ruling that plaintiff is liable under the terms of the interconnection agreement between plaintiff and defendants AT & T Communications of Delaware, Inc. and TCG Delaware Valley, Inc. for interest on

---

**15.** Verizon asserts that the "only extrinsic evidence in the record below of the parties' intent supported *Verizon's* interpretation of the [ICA]." (D.I. 56 at 36–37 (original emphasis).) But that claim is flatly at odds with the record, which shows that the PSC did indeed review the extrinsic evidence cited by Verizon (*see* D.I. 1 at Ex. B, ¶ 23; D.I. 51 at JA116 ¶ 26 & n. 16, JA118 ¶ 30.) It simply was not persuaded by it, and, in light of the other extrinsic evidence it reviewed, as well as the intrinsic evidence, its decision in that regard was appropriate.

such unpaid reciprocal compensation, all as more fully set forth in the aforesaid Memorandum Opinion.