FILED
United States Court of Appeals
Tenth Circuit

June 2, 2009

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DEER CREST ASSOCIATES I,
L. L.C., Utah limited liability company,

        Plaintiff - Counter-
        Defendant - Appellee,

    v.

AVALON DEER VALLEY, L.L.C., an
Oregon limited liability company;
WILLAMETTE LANDING
DEVELOPMENT, INC., an Oregon
corporation; A. PAUL BRENNEKE, an
individual,

        Defendants - Counter-
        Claimants - Appellants,

    v.

DEER CREST RESORT GROUP,
L.L.C., a Delaware limited
liability company,

        Counterclaim - Defendant.

No. 07-4164

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D. Ct. No. 2:04-CV-220-TS)**

Julianne P. Blanch, Snow, Christensen & Martineau, Salt Lake City, Utah (Paxton
R. Guymon, Joel T. Zenger, and Miller Guymon, Salt Lake City, Utah, with her
on the briefs), appearing for Appellants.

Troy L. Booher (Dan R. Larsen, with him on the briefs), Snell & Wilmer, LLP, Salt Lake City, Utah, appearing for Appellee.

Before **TACHA**, **MURPHY**, and **TYMKOVICH**, Circuit Judges.

**TACHA**, Circuit Judge.

Plaintiff-Appellee Deer Crest Associates I, L.C. ("Deer Crest") and the Defendants-Appellants (collectively, "Avalon") contracted for a construction project on Deer Crest's land. Deer Crest ultimately filed suit against Avalon for, among other claims, breach of contract. Avalon counterclaimed. After motions for summary judgment and a bench trial, the district court entered final judgment for Deer Crest on each of its claims and against Avalon on its counterclaims. Avalon appeals. We have jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

Deer Crest owns more than six hundred acres of land near Utah's Deer Valley Ski Resort. Avalon comprises two real estate development companies—Avalon Deer Valley, LLC ("ADV") and Willamette Landing Development, Inc. ("Willamette")—and their principal owner, Paul Brenneke. In February 2001, Deer Crest approached Mr. Brenneke about funding and developing the Deer Crest Project (the "Project"), which entailed the construction of a world-class hotel, high-end condominium units, and private resort residences on Deer Crest's land. By June 2001, the parties had reached sufficient consensus

that Avalon began managing and developing the Project. In August 2001, the parties signed a formal operating agreement (the "Agreement") memorializing their rights and obligations.[1]

The Agreement created a new company, the Deer Crest Resort Group, LLC ("DCRG"), to conduct all Project-related business. The Agreement designated ADV and Deer Crest as DCRG's members, and Willamette as the developer of the Project. The Agreement also outlined a development schedule that consisted of two phases; Avalon was required to reach a number of Project milestones as part of Phase I before beginning Phase II. Finally, the Agreement gave both Deer Crest and Avalon the option to terminate their relationship under specified circumstances. Deer Crest could terminate the Agreement if Avalon failed to meet any of the Phase I milestones. Avalon could terminate the Agreement at any time prior to the completion of Phase I, but if Avalon chose to do so, it had to convey to Deer Crest certain materials, including architectural plans, permits, appraisals, site studies, and legal agreements. The Agreement also provided Avalon with a "Second Year Option," which allowed it to terminate its participation in the Project after the first year. This option had to be exercised, if at all, by May 15, 2002.

On January 8, 2002, shortly after Avalon was required to break ground for

---

[1]The parties agreed that Delaware law would govern the Agreement, and that Utah law would govern other aspects of their relationship.

Phase I construction, Mr. Brenneke delivered a letter to Deer Crest signed by counsel, stating, "Consistent with the operating agreement, we, Avalon Deer Valley LLC, are terminating our involvement with Deer Crest Resort Group LLC, and withdrawing as a member effective immediately." However, Avalon did not initiate the termination and wrapping-up procedures outlined in the Agreement, and Willamette continued its development of the Project. Avalon also began negotiating with Deer Crest for a new Phase I financing plan. The parties memorialized that plan in a letter of understanding ("the Letter"), dated January 16, 2002. The Letter described ADV as a member of DCRG and stated that the Letter "constitutes an amendment of the Operating Agreement."

Project construction began on January 21, 2002. On February 8, Avalon and Deer Crest entered into a memorandum of understanding ("the Memorandum") in which ADV, Willamette, and Deer Crest identified themselves as members of DCRG. Although the Memorandum made specific modifications to the Agreement, it contemplated that the Agreement would otherwise remain in effect. On May 14—one day before the Second Year Option was set to expire—Mr. Brenneke signed a document guaranteeing Avalon's obligations under the Agreement and the Memorandum. The next day, Avalon notified Deer Crest that it would continue to invest in the Project, and construction on the Project continued.

On March 5, 2003, in response to Avalon's failure to meet certain Phase I

milestones, Deer Crest sent a letter to Mr. Brenneke declaring the Agreement terminated and requesting that Avalon participate in the winding-up procedures set forth in the Agreement. Avalon replied on March 25, stating that it "hereby terminates the [A]greement." Deer Crest then filed suit against Avalon based on its failure to comply with its obligations under the Agreement. Deer Crest asserted claims for breach of contract, breach of personal guaranty, negligent misrepresentation, and unjust enrichment. Avalon counterclaimed for unjust enrichment and breach of the covenant of good faith and fair dealing.[2] The district court granted Deer Crest's motion for partial summary judgment on Avalon's counterclaim for unjust enrichment. Following a bench trial, the district court entered judgment for Deer Crest on each of its claims and against Avalon on its remaining counterclaim for breach of the covenant of good faith and fair dealing. The district court found that the Agreement had terminated on March 5, 2003, as opposed to January 8, 2002 or May 15, 2002, and it used that termination date to calculate the damages it awarded to Deer Crest.

On appeal, Avalon argues that the district court made two contradictory determinations regarding the termination date of the Agreement. Although the district court found after the bench trial that the Agreement was terminated on March 5, 2003, Avalon asserts that the court relied on an earlier date when it

---

[2]Avalon also asserted additional counterclaims that are not relevant to this appeal.

decided the motion for summary judgment. Avalon contends that this earlier termination date—either January 8, 2002 or May 15, 2002—reduces the amount of damages Avalon owes to Deer Crest.[3]

## II. DISCUSSION

A.    Standard of Review

We review de novo a district court's application of state law to interpret a contract. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991) ("[A] court of appeals should review de novo a district court's determination of state law."); *Unicover World Trade Corp. v. Tri-State Mint, Inc.*, 24 F.3d 1219, 1222 (10th Cir. 1994) (reviewing de novo the district court's interpretation of Wyoming contract law).

B.    The District Court's Determination of the Termination Date

The district court was not inconsistent in its determination of the Agreement's termination date because it did not make any such determination until after the bench trial. In granting partial summary judgment to Deer Crest, the court never assigned a date to the termination of the Agreement; it simply stated in dicta that "it was [Avalon] who terminated the agreement." Avalon interprets this statement as a factual finding that Avalon terminated the

_____

[3]Alternatively, Avalon requests that we reinstate its counterclaim for unjust enrichment. Avalon fails to demonstrate, however, that the district court erred in finding that Avalon failed to meet all of the elements required for an unjust enrichment claim.

Agreement in 2002, but this is nothing more than Avalon's speculation. Moreover, in its memorandum opposing summary judgment, Avalon itself argued that the Agreement was terminated "by May 15, 2002, at the latest." Thus, the district court at most simply accepted Avalon's position without assessing that position's accuracy. *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997) ("[T]raditional 'findings of fact' are inappropriate in a summary judgment order, because if summary judgment is proper no findings of fact need be made and the case can be resolved as a matter of law."). *See also Ando v. Great W. Sugar Co.*, 475 F.2d 531, 535 (10th Cir. 1973) (at summary judgment, "no margin exists for the disposition of material factual issues" and summary judgment does not "serve[] as a substitute for trial of the case.").

Avalon's argument that the Agreement terminated on January 8, 2002, or alternatively, on May 15, 2002 is likewise unavailing. Although Avalon delivered a termination letter to Deer Crest on January, 8, 2002, the parties' conduct demonstrates that neither party intended to end their relationship. In fact, Avalon made numerous subsequent representations that the Agreement remained in effect. As the district court observed in its conclusions of law, Delaware courts "have long looked to relevant facts and circumstances surrounding the contract, including the actions of the parties, in ascertaining the intention of the parties. Such actions are of great weight in determining the meaning and applicability of the contract . . . ." *Artesian Water Co. v. Del. Dep't of Highways & Transp.,* 330

A.2d 441, 443 (Del. 1974) (citations omitted).  Here, the relevant facts and circumstances support the district court's determination that the Agreement survived beyond January 8, 2002.  Avalon made no attempt to wrap up and terminate its involvement with DCRG, as required by the Agreement.  Avalon did not convey to Deer Crest any of the architectural plans, permits, appraisals, site studies, legal agreements, or other documents called for in the Agreement's termination provisions.  Willamette continued developing the Project.  Avalon's counsel drafted the Letter, which Mr. Brenneke signed, affirming that Avalon remained a member of DCRG.  The Letter also affirmed that the Agreement remained operative, as amended.  Thereafter, Avalon and Deer Crest signed the Memorandum, which also acknowledged that the Agreement remained in effect.  Finally, Avalon represented in a February 25, 2003 letter that "[t]here are three operative agreements now in effect; (1) the Operating Agreement, (2) Memorandum of Understanding (MOU), and (3) [t]he . . . Letter of Understanding."  Avalon's activities clearly demonstrate that it chose to continue its relationship with Deer Crest after January 8, 2002, under the original Agreement.  We conclude, therefore, that the district court did not err in holding that Avalon did not terminate the Agreement on January 8, 2002.

We also disagree with Avalon's assertion that the Agreement automatically expired on May 15, 2002.  The Agreement expressly states that it "may be terminated. . . at the election" of Deer Crest or Avalon under certain conditions.

- 8 -

Neither party elected to terminate the Agreement in May 2002. In fact, Avalon made clear its intention to continue the Project. On May 14, Mr. Brenneke personally guaranteed Avalon's obligations. On May 15, 2002, Avalon informed Deer Crest by email that despite its failure to achieve certain Project milestones, it had "agreed to proceed to invest in the [P]roject." As noted above, Avalon's conduct, and specifically its desire to continue the Project, is "of great weight in determining the meaning and applicability of the contract." *Artesian Water*, 330 A.2d at 443. Thus, the district court correctly concluded that the Agreement did not terminate on May 15, 2002.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of partial summary judgment and its final order in favor of Deer Crest.